# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PHILLIP JASON RHOADS

           Movant-Defendant,

v.                                    CIV  99-115 JC/KBM
                                              CR   96-571 JC

UNITED STATES OF AMERICA,

           Respondent-Plaintiff.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Phillip Jason Rhoads' Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. Currently in state custody and proceeding *pro se,* Rhoads attacks the Judgment and Sentence entered February 13, 1998 in *United States of America v. Phillip Jason Rhoads,* CR 96-571 JC. Having considered the arguments, pleadings, relevant law, and being otherwise fully advised, the Court finds the motion to be without merit and recommends it be denied. As such, an evidentiary hearing is not necessary.

## Background

Rhoads was arrested for selling methamphetamine on June 2, 1995. Because he was on probation for state offenses at the time of arrest, Rhoads was immediately returned to state custody. The federal grand jury later returned a four-count indictment against Rhoads and his co-defendant, Jared Nathan Swell. Count I charged both of them with possessing and intending to distribute more than 100 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(B), and 18 U.S.C. § 2. Count II charged the codefendant and Count III charged Rhoads with carrying a firearm in connection with the narcotics trafficking offense in violation of 18 U.S.C. § 924(c). Count IV charged Rhoads as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and 18 U.S.C. § 924(a)(2). *Doc. 1.*[1]

Because he had a prior felony conviction for a narcotics violation, Rhoads was eligible for an enhanced penalty. *Doc. 49.* At his appearance for the federal charges, Rhoads did not request an immediate federal trial under the Interstate Agreement on Detainers. Instead, he asked to be returned to state custody so he could continue earning "good time" credits and continue his education and substance abuse courses. *Doc. 21.*

Pursuant to a written plea agreement, Rhoads stipulated that he possessed and intended to distribute more than 100 grams of methamphetamine and that he carried a firearm in relation to this drug trafficking offense. Thus, he pled guilty to Counts I and III, and the felon with a firearm count was dismissed. Paragraph 4 of the agreement provided that defendant understood that he faced "[i]mprisonment of not less than five (5) and not more than forty (40) years with respect to Count I, and five (5) years, to run consecutive to the sentence for Count I, with respect to Count III." *Doc. 80.* In other words, the least amount of time he faced under the applicable statutes was 10 years, or 120 months. Another section, however, noted that he would be sentenced under the Sentencing Reform Act of 1984, but that the applicable guideline range could not be ascertained until after a presentence report ("PSR") was prepared and considered by the judge. The agreement further provided that:

> defendant will not be allowed to withdraw the plea if the applicable guideline range
> is higher than expected or if the Court departs from the applicable guideline range.

---

[1]Unless otherwise indicated, citations are to documents in the criminal action file.

**The defendant fully understand that determination of the sentencing range or guideline level, as well as the actual sentence imposed, is solely in the discretion of the Court.**

*Id. (emphasis original).*

Although the United States agreed to recommend sentencing at the lower end of the applicable guideline range, it refused to make any agreement about what an appropriate sentence would be and it refused to make any agreement about what its position would be if defendant asked the court to impose a particular sentence. Moreover, Paragraph 12 of the agreement provided that:

The defendant agrees and represents that this plea of guilty is freely and voluntarily made and not the result of force or threats or of promises apart from those set forth in this plea agreement. **There have been no representations or promises from anyone as to what sentence the Court will impose.**

*Id. (emphasis added).* Rhoads signed indicating that he had "read this agreement and carefully reviewed every part of it with my attorney. In understand the agreement and voluntarily sign it."

*Id.*

Chief District Judge John E. Conway reviewed the plea agreement with Rhoads and the following colloquy took place:

THE COURT: All right. I'm going to go through your plea agreement with you. If there's anything you want to ask me about, you don't understand, you want me to state it in a different way, you want to stop and talk to your attorney, just tell me.

\* \* \* \* \*

THE COURT: All right. The maximum sentence that can be imposed is not less than five years nor more than 40 years with respect to Count I, and five years as to Count III which will run consecutive to any sentence imposed under Count I . . . . Do you understand that to be the maximum sentence that you could receive?

THE DEFENDANT. Yes, sir.

\* \* \* \* \*

THE COURT: [Your attorney] has given you his best estimate of what he

3

thinks your sentencing guideline will be. However, I'm the one who sets the sentencing guideline, and if his guideline is lower than what I actually determine it to be, I will not allow you to withdraw our plea based solely on that. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

*TR, Plea, pp. 3-5.*

Rhoads also responded that he understood the charges, the terms of the plea agreement, had no questions of the District Judge about the plea agreement, and was making the plea voluntarily. He admitted that he had the drugs and gun in his possession on the day in question. He proceeded to plead guilty.

If Rhoads were not considered a career offender, the applicable guideline range for Count I would begin at 120 months; if he were considered a career offender, the applicable guideline range would begin at 188 months. Count III carried the five-year mandatory consecutive sentence, regardless of the penalty imposed on Count I. *See Doc. 98, p. 6.01.*

At sentencing, Counsel argued that although Rhoads qualified as a career offender, the facts warranted a downward departure of the applicable criminal history and offense levels. A psychologist evaluated Rhoads at the request of his attorney for the purpose of assisting the court in making a sentencing decision. Counsel relied on the psychologist's evaluation showing that Rhoads had an extraordinary history of child abuse and had committed the four prior offenses between the ages of 18 and 21. Furthermore, he argued that Rhoads exhibited an extraordinary acceptance of responsibility. Counsel requested that the statutory minimum of a total of 10 years be imposed – two mandatory minimum five year terms, running consecutively. *Doc. 92.* The United States opposed the motion, arguing, among other things, that defendant was a suspect in a prison murder and that the departure was not warranted under the applicable guidelines and

caselaw. *Doc. 95.*

Judge Conway chose not to depart downward, but did grant a three-level reduction for acceptance of responsibility and sentenced Rhoads to the lowest possible end of the applicable guideline range for Count I – 188 months.   Judgment was entered February 13, 1998, imposing imprisonment for a total of 248 months (188 months on Count I and 60 months on Count III, to run consecutively).   *See Doc. 98.*  Defendant was also advised by Judge Conway of his right to appeal at sentencing, *in forma pauperis* if he was unable to pay.  *TR, Sentencing, p. 9.*

Defendant did not immediately appeal his sentence.  Instead, proceeding *pro se* and within one year of the entry of Judgment, he filed the instant action on February 3, 1999.  He raises five grounds for relief.  *Doc. 101.*[2]

## The Presentence Confinement Credit Issue Is Partly Without Merit And Partly Premature

Rhoads argues that he "was" given presentence confinement credit from the date of the indictment (September 27, 1996), instead of from the date of arrest (June 2, 1995).  He also argues that the Judgment fails to note the proper credit due.

A district court has no jurisdiction to compute a pretrial detention sentence credit at the time of sentencing.  Credit is an issue the Bureau of Prisons will determine when Rhoads enters federal custody.  Furthermore, once the credit decision is made, a court has no jurisdiction to hear the claim until it is exhausted administratively. *United States v. Thomas,* 68 F.3d 392, 395 (10th Cir. 1995); *United States v. Jenkins,* 38 F.3d 1143, 1144 (10th Cir. 1994).

The docket reflects that Rhoads is in state custody.  He makes no allegations that he is in

---

[2]Rhoads was not granted leave to file a traverse.  *Doc. 111.*  The contents of the traverse are known, though, because he attached it to the motion.  Rhoads tries to circumvent the ruling by raising the arguments again in a "brief" in support of his motion.  *Doc. 112.*  The unusual posture of this case warrants addressing those arguments briefly.

federal custody or that the claim has been presented and exhausted. Accordingly, there was no error by Judge Conway at sentencing, and there is no decision on the part of the Bureau of Prisons to review at this time.

### Challenge To Decision Declining To Depart Downward Is Not Cognizable In Habeas

Rhoads argues that Judge Conway incorrectly applied the Sentencing Guidelines by considering him a career offender, instead departing downward on the basis of Rhoads' youthful age and the short time span between his prior crimes. In connection with the decision not to depart, he contends that the judge improperly considered information indicating that Rhoads might face charges of committing a homicide while in prison. He asserts that the murder information was contained in a letter and that he was "denied the right to challenge the information in said letter [which] should have been included in the pre-sentence report or not at all."

Regardless of whether Rhoads was permitted to see the letter itself, the record reflects that the information about the murder was indeed contained in the PSR which defendant and his attorney had an opportunity to review. Further, at sentencing, when given the opportunity to call matters in the PSR to Judge Conway's attention, Rhoads responded that he had none to raise. *TR Sentencing, p. 2.*[3]

In ruling on Rhoads' motion for a downward departure, Chief Judge Conway stated "I find that there is no basis for a downward departure. I have the authority to downward depart, but I choose not to do so." *Id.*, p. 3. Where, as here, a district judge is aware of his authority to depart downward and chooses not to, the decision is final and cannot be appealed. *United States v.*

---

[3]*See also Doc. 95* (the PSR indicated that "defendant is now a suspect in a Los Lunas prison murder. Although no indictment has been returned yet, a new grand jury for Valencia County is expected to convene next month").

*Coddington,* 118 F.3d 1439, 1441 (10th Cir. 1997); *United States v. Jones,* 80 F.3d 436, 439

(10th Cir.), *cert. denied,* 519 U.S. 849 (1996); *United States v. Rowen,* 73 F.3d 1061, 1063 (10th

Cir. 1996); *United States v. Barrera-Barron,* 996 F.2d 244, 246 (10th Cir.), *cert. denied,* 510 U.S.

937 (1993). Because this sentencing decision was properly made in the first instance and there is

nothing for review, the challenge to the decision cannot qualify as a "fundamental error"

cognizable in habeas under § 2255. *See United States v. Talk,* 158 F.3d 1064, 1069-70 (10th Cir.

1998), *cert. denied,* 119 S.Ct. 1079 (1999).[4]

### Rhoads' Due Process Claim Is Barred

Rhoads argues that he was denied due process when he was not afforded an opportunity to

appear in person before the federal grand jury. When a defendant enters a guilty plea, there are

strict limitations under which the plea can be challenged collaterally as well as what other issues

can be raised in that collateral challenge. This type of nonjurisdictional issue is foreclosed from

collateral attack by the plea of guilty. Furthermore, although he was advised of his right to do so

by the District Judge, no direct appeal was taken following sentencing. Thus, the claim is

procedurally defaulted as well unless Rhoads establishes "cause" for his procedural default and

"prejudice" resulting from the alleged error. *See e.g., United States v. Allen,* 16 F. 3d 377, 378

(10th Cir. 1994). Even though the United States did not raise the issue of barred claims, the court

can do so *sua sponte. See Hines v. United States,* 971 F.2d 506, 509 (10th Cir. 1992).

It appears that the Tenth Circuit has not addressed this issue. However, it is well-settled

that the target of an investigation has no right to be present before the grand jury. *E.g., Daniels v.*

---

[4]Therefore, as raised in the traverse and brief, the claim of ineffective assistance of counsel for failure to challenge the PSR affords no basis for relief. Indeed, counsel used a downward departure strategy to try and dilute the effect of the prior convictions on sentencing, and, as noted above, defendant himself declined to challenge the PSR when given the opportunity to do so.

*United States,* 26 F.3d 706, 711 (7th Cir. 1994); *United States v. Pabian,* 704 F.2d 1533, 1538-39 (11th Cir. 1983); *United States v. Fritz,* 852 F.2d 1175, 1178 (9th Cir. 1988), *cert. denied, sub nom. Levy v. United States,* 489 U.S. 1027 (1989); *United States v. Smith,* 552 F.2d 257, 261 (8th Cir. 1977). Accordingly, this ground for relief not only is barred from collateral attack, it is wholly without merit.

## Rhoads' Double Jeopardy Claim Is Meritless

Rhoads argues that his conviction violated double jeopardy because the money and property underlying the criminal offense had already been seized in a civil forfeiture.[5] Prior to entering his guilty plea on November 3, 1997, the Supreme Court held that civil forfeitures are not "punishment" or "criminal" for the purposes of the double jeopardy clause. *United States v. Ursery*, 518 U.S. 267, 292 (1996). Accordingly, Rhoads's double jeopardy argument is baseless. *E.g., United States v. Williams,* 118 F.3d 717, 718 (10th Cir.), *cert. denied,* ___ U.S. ____, 118 S.Ct. 636 (1997); *United States v. One Parcel Property*, 106 F.3d 336, 338 (10th Cir. 1997).

Likewise, the alleged double jeopardy violation based on charging Rhoads with a firearm offense during the commission of the drug trafficking offense as well as being a felon with a firearm is patently without merit. *See e.g., United States v. Johnson,* 977 F.2d 1360, 1375

---

[5]Ordinarily, a double jeopardy challenge would fall outside the "plea-as-waiver" bar because it is a challenge to the court's power to "hale [the defendant] into court." *Osborn v. Shillinger,* 997 F.2d 1324, 1327 (10th Cir. 1993). On the other hand, it is unclear whether a procedurally-defaulted double jeopardy claim in the guilty plea context should be addressed on the merits when ineffective assistance of counsel is alleged. *Compare United States v. Kunzman,* 125 F.3d 1363, 1365-66 (10th Cir. 1997) (argument that judgment in bankruptcy constituted double jeopardy in criminal proceeding addressed on merits despite entry of guilty plea and failure to pursue direct appeal, with ineffective assistance of counsel alleged), *cert. denied,* 118 S.Ct. 1375 (1998) *with United States v. Cox,* 83 F.3d 336, 341 (10th Cir. 1996) (argument that civil forfeiture constituted double jeopardy in criminal proceeding held barred for failure to raise it on direct appeal, despite allegation of ineffective assistance of counsel). Therefore, the claim will be addressed on the merits here.

(10th Cir. 1992), *cert. denied sub nom. Behrens v. United States,* 506 U.S. 1070 (1993). Equally groundless is Rhoads' contention that the government "loaded on" similar multiple counts in violation of double jeopardy to pressure him into accepting the plea.[6]

**The Alleged Promise of Sentence Does Not Render Rhoads' Guilty Plea Involuntary**

As recently announced by the Supreme Court, the general rules of procedural default for failure to pursue a direct appeal apply to cases where a plea is entered. "[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States,* 523 U.S. 614 (1998). Tenth Circuit law recognizes this principle, but also holds that a claim of ineffective assistance of counsel can render a plea involuntary. *Romero v. Tansy,* 46 F.3d 1024, 1033 (10th Cir.) ("Once a defendant has pled guilty, the only non-jurisdictional avenue for challenging his conviction is to claim that his plea was not knowing and voluntary," however, ineffective assistance of counsel can render plea involuntary), *cert. denied,* 115 S.Ct. 2591 (1995); *see also Kunzman,* 125 F.3d at 1365.

Under the two-prong test of *Strickland v. Washington,* 466 U.S. 668 (1984), a defendant must show that: (1) his counsel's performance was objectively unreasonable, and (2) there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *E.g., United States v. Gray,* ___ F.3d. ____, 1999 WL 436403 (10th Cir. 1999); *United States v. Carr,* 80 F.3d 413, 418 (10th Cir. 1996); *Romero,* 46 F.3d at 1033.

Rhoads argues that his plea was not "knowing and intelligently made" because there was a "verbal" agreement between the prosecutor and defense counsel that the judge would only give him a sentence of 120 months. First, I find this argument preposterous, given the sections of the

---

[6]These arguments were raised in Rhoads' traverse and "brief."

plea agreement and plea colloquy quoted above. Rhoads specifically acknowledged by signing the plea agreement and by his sworn responses in open court that he knew that the sentencing decision depended on the applicable guideline range and was ultimately solely within the discretion of Judge Conway. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).[7]

Second, Rhoads could not establish the first prong of the two-part *Strickland* test as a matter of law with this argument because a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance." *United States v. Gordon,* 4 F.3d 1567, 1570 (10th Cir. 1993), *cert. denied,* 510 U.S. 1184 (1994); *see also United States v. Williams,* 118 F.3d 717, 718 (10th Cir.), *cert. denied,* 118 S.Ct. 636 (1997); *Worthen v. Meachum,* 842 F.2d 1179, 1184 (10th Cir. 1988), *overruled on other grounds by Coleman v. Thompson,* 501 U.S. 722 (1991) (regarding procedural default). Accordingly, this ground affords no basis for habeas relief.

### Ineffective Assistance of Counsel Claims Are Without Merit Save One, But That Does Not Render The Plea Involuntary or Warrant An Evidentiary Hearing or Habeas Relief

Rhoads argues that his appointed counsel was ineffective because: (a) counsel refused to cooperate with him on the possible defense strategies of double jeopardy, prejudicial prosecution, pre-indictment delay, and entrapment; (b) counsel did not challenge Rhoads' prior armed robbery

---

[7]A review of the plea agreement, transcripts of the plea and sentencing hearings, and the record also belies any factual basis for Rhoads' additional arguments that (1) the Assistant U.S. Attorney promised that the judge would depart downward, and (2) Rhoads was not informed of all of the consequences of the sentencing guidelines and not informed of "the loss of his right to appeal." Indeed, he was advised of his right to appeal.

conviction that was used in the career offender calculation; and (c) counsel did not speak with Rhoads after sentencing or appeal the sentence.

With regard to the "defense strategy" claims, two are without merit as a matter of law. The double jeopardy issues fail for the reasons set forth above and thus cannot provide a basis for a finding of ineffectiveness. To the extent that the "prejudicial prosecution" claim is based on the double jeopardy or due process arguments, the claim also fails for the reasons set forth above. Likewise, counsel's alleged failure to challenge the validity of the prior state conviction is not ineffective assistance as a matter of law.

> Even if counsel did not thoroughly investigate defendant's prior convictions, he did not render ineffective assistance because the prior convictions are presumed valid. *See Parke v. Raley,* 506 U.S. 20, 29 (1992) (presumption of regularity attaches to final judgments); *see also Custis v. United States,* 114 S.Ct. 1732, 1739 (1994) (impermissible to use federal sentencing forum to review state conviction).

*Cox,* 83 F.3d at 340 (internal citations amended for clarity and brevity). Thus, the Court cannot say that a failure to pursue Rhoads' defense strategies was objectively unreasonable.

Additionally, Rhoads cannot establish the requisite prejudice necessary to satisfy the second prong of *Strickland* for these claims. To prevail on an ineffective assistance of counsel claim for failure to investigate or advise of certain defense strategy claims, the burden rests with the habeas petitioner to show that the defense likely would have prevailed at trial. *E.g., Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *see also e.g., Gray, supra* (citing *Hill* for same proposition). Nowhere in his habeas petition, or even the traverse and brief, does Rhoads explain how any of these "defenses" were likely to prevail at trial. Never does he contend that he would not have pled guilty. *E.g., Laycock v. State of New Mexico,* 880 F.3d 1184, 1187 (10th Cir. 1989) (allegation of ineffectiveness for failure to file motions failed because petitioner "suggests nothing to demonstrate that motions were necessary or appropriate"). Therefore, the first two categories of ineffective

assistance of counsel claims fail on the merits or, alternatively, for failure to establish prejudice.[8]

The final claim, that counsel's failure to appeal constitutes ineffective counsel, requires greater analysis. In *Romero v. Tansy,* the Tenth Circuit held that

> **where a defendant claims that counsel was ineffective for failing to perfect an appeal, he must only satisfy the first prong of the *Strickland* test** – that counsel's performance fell below an objective standard of reasonableness.
>
> * * * * *
>
> The Sixth Amendment's guarantee of effective counsel requires that counsel explain the advantages and disadvantages of an appeal, advise the defendant as to whether there are meritorious grounds for an appeal, and inquire whether the defendant wants to appeal his conviction. . . . Counsel retains these obligations unless defendant executes a 'voluntary, knowing, and intelligent' waiver or his right to counsel on appeal. . . . 'Merely advising a defendant of his right to appeal is insufficient to satisfy the right to counsel.' . . . And a defendant's failure to contact counsel 'does not suggest that he knowingly and voluntarily waived his right to counsel.'

*Romero,* 46 F.3d at 1030-31 (10th Cir. 1995) (citations omitted). Thus, where counsel's failure to perfect an appeal is alleged, a habeas court is to ascertain whether the defendant waived his right to appellate counsel or whether counsel was ineffective in failing to perfect an appeal. *See United States v. Moore,* 83 F.3d 1231 (10th Cir. 1996). If ineffectiveness is found, prejudice is presumed and the remedy is to resentence defendant so that he may then perfect an appeal. *Id.*

The language quoted above seems absolute. Nevertheless, a recent district court decision from Colorado questioned whether *Romero* intended that prejudice for failure to perfect an appeal should be presumed under all circumstances. *See United States v. Edmond,* 29 F. Supp.2d 1197 (D. Colo. December 10, 1998). In *Edmond*, Senior District Judge Weinshienk held that where defendant receives "a substantial benefit for his guilty plea, he is not entitled to habeas relief based on his counsel's failure to perfect an appeal on his behalf." *Id.* at 1198. In her ruling, Judge

---

[8]Failure to establish prejudice defeats additional ineffective assistance of counsel contentions raised in the traverse and brief.

Weinshenk relied on an unpublished Tenth Circuit opinion, *United States v. Fowler*, 1996 WL 734637 (10th Cir. December 23, 1996) (attached).

*Fowler* is substantially similar to this case factually. The defendant was charged with multiple crimes, pled guilty to some of them in exchange for dismissal of others, was told of his right to appeal at sentencing, and failed to file an appeal. The Tenth Circuit panel found that Fowler had not been "prejudiced by his procedural default because he substantially benefitted from his guilty plea." In fact, the defendant admitted in his plea agreement that he had stolen thirty firearms at gunpoint. In analyzing whether to excuse his procedural default as a "fundamental miscarriage of justice," the court stated:

> Had he prevailed on appeal, he would have had his plea vacated and again risked facing prosecution for the charges dismissed as a result of the plea. He now asks us on collateral review to excise from his plea agreement a conviction as to which he has admitted guilt, from which he has gained a favorable plea bargain, and which he has declined to challenge on direct appeal. Only a hypertechnical construction of 'factual innocence' could lead us to conclude that the facts of this case constituted a fundamental miscarriage of justice. We decline to so hold.

The *Fowler* panel held that counsel was not ineffective for recommending acceptance of the plea bargain or in failing to appeal because there was no prejudice demonstrated with regard to "the decision not to appeal." The court rejected Fowler's bare assertion that he would not have pled guilty; the defendant avoided robbery charges by not going to trial, and he proffered no reason why he might have been confident of an acquittal.

The *Edmond* decision was not appealed and the Tenth Circuit has not yet had an opportunity to review its rationale. Absent other binding authority to the contrary, I am persuaded that the Court should follow the *Fowler/Edmond* rationale. I respectfully recommend that the Court decline to find prejudice where, as here, a counseled, intelligent and voluntary waiver was entered that substantially benefitted the defendant. The felon firearm charge was dropped against

13

Rhoads. That charge carried a statutory penalty of up to ten years, and the charge would have resulted in additional upward adjustments to the applicable offense level guideline. Had he gone to trial, Rhoads would not have been awarded a three-level downward adjustment for acceptance of responsibility. Despite qualifying as a career offender, the government recommended and the sentencing judge adopted a sentence at the low end of the applicable guidelines. Having received the benefit of his bargain, Rhoads is not entitled to collateral relief.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT THE MOTION BE DENIED.**

_Karen B Molzen_
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

104 F.3d 368 (Table)
97 CJ C.A.R. 33
**Unpublished Disposition**
**(Cite as: 104 F.3d 368, 1996 WL 734637 (10th Cir.(Colo.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the publication and citation of unpublished opinions.)

**UNITED STATES of America,**
**Plaintiff-Appellee,**
**v.**
**Lester Eugene FOWLER,**
**Defendant-Appellant.**

**No. 95-1207**

United States Court of Appeals, Tenth Circuit.

Dec. 23, 1996.

Before ANDERSON, BALDOCK, and HENRY, Circuit Judges.

ORDER AND JUDGMENT [FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

HENRY, Circuit Judge.

**1 Defendant Lester Eugene Fowler appeals from the denial of his motion under 28 U.S.C. § 2255. [FN1] Mr. Fowler alleged in his § 2255 motion that the sentence he was serving for unlawful possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1), violated the United States Constitution. Mr. Fowler's claim was based on his contention that he was not subject to the provisions of § 922(g)(1) because, although he had been previously convicted of a felony in Colorado, his civil rights had been restored under Colorado law before he possessed the firearm in question. Mr. Fowler also contended that he had received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

FN1. Initially, Mr. Fowler appealed pro se. A panel of this court appointed counsel and set the case for oral argument.

The district court held that the first of Mr. Fowler's claims was procedurally barred because he had failed to raise it on direct appeal and, in any event, that the claim failed on the merits. The court also observed that Mr. Fowler's counsel was competent. We have jurisdiction under 28 U.S.C. § 2255, and we affirm.

BACKGROUND

On September 15, 1994 a federal grand jury returned an indictment charging Mr. Fowler

with four counts relating to his participation in an armed robbery, including: unlawful possession of a firearm by a previously convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count I); affecting commerce through robbery of a Gart Brothers Sporting Goods store and taking thirty firearms by actual and threatened physical violence in violation of 18 U.S.C. § 1951(a) and (b) (Count II); use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (Count III); and theft of thirty firearms in violation of 18 U.S.C. § 922(u) (Count IV). On the advice of his court-appointed counsel, Mr. Fowler entered into a plea agreement whereby he pleaded guilty to Counts I and III and agreed to assist the government with its investigation of the crime; in exchange, the government agreed to dismiss Counts II and IV of the indictment and to request downward departures in sentencing on Counts I and III for substantial assistance and acceptance of responsibility.

In the plea agreement, Mr. Fowler admitted that he had engaged in the following conduct:

On June 27, 1994 Mr. Fowler participated in an armed robbery of Gart Brothers Sporting Goods Store, a federally licensed firearms dealer located at 14401 East Exposition Avenue, Aurora, Colorado. The defendant who was armed with a firearm and an armed companion hid in the store until it was closed, whereupon they emerged and held two store employees at gunpoint. They forced the store manager to open the safe and the gun vault, and left the store with approximately $7500 in cash and 30 firearms which were a part of the store's firearms inventory.... Gart Brothers does substantial business which affects interstate and foreign commerce.

Rec. vol. I, doc. 9, ex. 2, at 3 (Plea Agreement and Statement of Facts Relevant to Sentencing). The plea agreement also

provided, and Mr. Fowler does not dispute, that

**2 [o]n August 12, 1994 the defendant, LESTER FOWLER, was arrested in an alley in Denver, Colorado by officers of the Denver Police Department. At the time of his arrest the defendant knowingly possessed a firearm....

Mr. Fowler was previously convicted in case number 87-CR-1400 in the City and County of Denver for the crime of First Degree Criminal Trespassing, a felony, the punishment for which could exceed imprisonment for more than one year.

Id. at 3-4.

The district court sentenced Mr. Fowler to sixty-three months' imprisonment for Count I and sixty months' imprisonment for Count III, to be served consecutively, and ordered that he pay restitution in the amount of $15,819.68 and a special assessment in the amount of $100.00. During the sentencing hearing, at which Mr. Fowler's counsel was present, the court advised Mr. Fowler of his right to appeal the court's sentencing decision. Mr. Fowler did not appeal.

DISCUSSION

In this appeal, Mr. Fowler claims that his rights were violated in two different ways. First, he appears to claim that his § 922(g)(1) conviction violated his due process rights. Second, he argues that his Sixth Amendment right to effective assistance of counsel was violated.

I. Conviction under § 922(g)(1)

Mr. Fowler claimed in his § 2255 motion that he was not prohibited from carrying a firearm under § 922(g)(1) because his civil rights had been restored by operation of Colorado law upon his release from prison following his

prior state conviction. However, the district court held that Mr. Fowler was procedurally barred from raising this claim on collateral review because he had "failed to demonstrate cause for his failure to present the claim on appeal and prejudice suffered therefrom or that a reviewing court's failure to review the claim will result in a fundamental miscarriage of justice." Rec. vol. I, doc. 10, at 2. The court went on to hold in the alternative that the claim failed on the merits because Mr. Fowler was indeed subject to prosecution under § 922(g)(1). We engage in de novo review of the district court's rulings on legal questions in § 2255 proceedings. United States v. Kissick, 69 F.3d 1048, 1051 (10th Cir.1995).

"Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." United States v. Warner, 23 F.3d 287, 291 (10th Cir.1994). Mr. Fowler pleaded guilty to a violation of § 922(g)(1). He did not object to his sentence, and he did not take a direct appeal. "A defendant's failure to present an issue on direct appeal bars him from raising the issue in his § 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed. Id. We therefore consider whether Mr. Fowler has made the showing necessary to excuse his procedural default.

## A. "Cause"

**3** Mr. Fowler argues that he has demonstrated cause for his failure to appeal this issue in that his trial counsel prevented him from doing so. "An attorney's error provides cause to excuse a procedural default only if the error amounts to constitutionally ineffective assistance of counsel." Rogers v. United States, 91 F.3d 1388, 1391 (10th Cir.1996).

We note at the outset that by arguing that § 922(g)(1) does not apply to him, Mr. Fowler raises a substantial question as to the adequacy of his counsel. Therefore, we first consider whether § 922(g)(1) was erroneously applied to Mr. Fowler in order to assess whether there was cause to excuse his procedural default.

Title 18, United States Code, Section 922(g)(1) provides in relevant part:
It shall be unlawful for any person--
(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
18 U.S.C. § 922(g)(1). The meaning of "crime punishable by imprisonment for a term exceeding one year" is clarified in 18 U.S.C. § 921(a)(20). First, "what constitutes conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20). Second:
Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.
Id.

Mr. Fowler was convicted in 1987 in a Colorado court of First Degree Criminal Trespass, a conviction which, the parties agree, would in the absence of a restoration of civil rights have satisfied the requirements necessary to trigger § 922(g)(1). Furthermore, the parties agree that Mr. Fowler's civil rights

were indeed restored pursuant to Article VII, Section 10 of the Colorado Constitution, which provides in relevant part that any person who was a qualified elector prior to ... imprisonment, and who is released therefrom ... by virtue of having served out his full term of imprisonment, shall without further action, be invested with all the rights of citizenship, except as otherwise provided in this constitution.

Colo. Const. art. VII, § 10. Mr. Fowler argues, therefore, that his 1987 conviction should not have been used as a predicate for his § 922(g)(1) prosecution.

In its response to Mr. Fowler's § 2255 motion in the district court, the government relied on Colo.Rev.Stat. § 18-12-108. That section was amended effective July 1, 1994, several weeks before Mr. Fowler's arrest, to expand the definition of the crime of "possession of weapons by previous offenders." Whereas before July 1, 1994 the statute prohibited firearms possession by persons previously convicted of only particular kinds of felonies, including burglary, arson and crimes of violence, Colo.Rev.Stat. § 18-12-108 (1986), the 1994 amendment widened the scope of the prohibition to include convictions for any prior felony. [FN2] The government argued that, because the statute now prohibited possession of a firearm by one who had previously committed any felony, including the criminal trespass offense of which Mr. Fowler had been convicted, Mr. Fowler was specifically prohibited by Colorado law from possessing a firearm. Therefore, the government contended, his 1987 conviction could properly be used as a predicate conviction under 18 U.S.C. § 922(g)(1) because it did not fall within the category of excepted convictions described in 18 U.S.C. § 921(a)(20). The district court was persuaded by this argument, holding in its order denying the § 2255 motion that:

FN2. The amended statute provides:
A person commits the crime of possession of a weapon by a previous offender if the person knowingly possesses, uses, or carries upon his or her person a firearm ... or any other weapon that is subject to the provisions of this article subsequent to the person's conviction for a felony, or subsequent to the person's conviction for attempt or conspiracy to commit a felony, under Colorado or any other state's law or under federal law.
Colo.Rev.Stat. § 18-12-108(1) (1995 Supp.) (emphasis added).

**4** Fowler was convicted of a crime punishable by imprisonment for a term exceeding one year. Although his civil rights had been otherwise restored, Colorado law expressly prohibited him as a convicted felon from possessing firearms. Colo.Rev.Stat. § 18-12-108, as amended. Accordingly, Fowler had a prior felony conviction for purposes of 18 U.S.C. § 922(g)(1).

Rec. vol. I, doc. 10, at 2-3 (Order of the district court denying the § 2255 motion).

We disagree. We believe that the 1994 Colorado statutory amendment did not render Mr. Fowler's 1987 trespass conviction a proper predicate for a subsequent § 922(g)(1) prosecution because the amendment did not negate the full restoration of his civil rights under the prior law for the purposes of § 921(a)(20). The decisions of other circuits and our interpretation of the relevant statutes convince us that this is the correct application. Indeed, the government now responsibly concedes this in its Supplemental Brief. See Aple's Supp. Br. at 9.

This Circuit has held that the automatic restoration under Colorado law of various rights of citizenship to felons convicted of

state offenses once they have completed their sentences constitutes a "restoration" for purposes of § 921(a)(20). United States v. Hall, 20 F.3d 1066, 1068-69 (10th Cir.1994). Such a restoration ordinarily precludes use of the prior conviction to support a § 922(g)(1) firearms possession charge. 18 U.S.C. § 921(a)(20). However, this Circuit has never considered whether a conviction for which civil rights had been restored, but were later restricted by a subsequent legislative act prohibiting previously convicted persons from possessing firearms, can be used to support a § 922(g)(1) indictment.

The Ninth Circuit was confronted with this question in United States v. Cardwell, 967 F.2d 1349 (9th Cir.1992). There, the defendant had had his civil rights restored at the time of his release from prison, but a subsequently enacted state law amendment had barred felons from possessing firearms. The government argued in Cardwell that the court should base its application of § 921(a)(20) on whether state law had prohibited the defendant from possessing a firearm at the time that he was alleged to have violated § 922(g)(1), rather than at the time his civil rights had been restored. But the court rejected this argument, reasoning that:

Section 921(a)(20) states that section 922(g)(1) applies if the pardon, expungement, or restoration of civil rights "expressly provides" that the defendant may not ship, transport, possess, or receive firearms. The plain meaning of this use of the present tense is that the courts must determine the effect of the pardon, expungement, or restoration of civil rights at the time it is granted and cannot consider whether the defendant's civil rights later were limited or expanded.

Id. at 1350-51 (citation omitted). We are similarly convinced that the use of the present tense in the quoted portion of § 921(a)(20)

clearly indicates that we are to consider only whether the law viewed at the time civil rights were restored "expressly provides" that the defendant may not ship, transport, possess, or receive firearms. See United States v. Haynes, 961 F.2d 50, 52- 53 (4th Cir.1992) (adopting the same interpretation of § 921(a)(20)); United States v. Traxel, 914 F.2d 119, 124-25 (8th Cir.1990) (same). If the law did not so expressly provide, then it is irrelevant whether the defendant's civil rights were subsequently limited. Because there was no such limiting provision in Colorado law applicable to Mr. Fowler at the time his civil rights were restored, we conclude that the government improperly relied upon his 1987 trespass conviction to support his § 922(g)(1) prosecution.

**5** As we have noted above, Mr. Fowler's counsel never raised the issue of the invalidity of the § 922(g)(1) charge during the plea proceedings, and he did not appeal the § 922(g)(1) conviction. When an attorney allows a defendant to plead guilty to a charge that is not a crime, substantial questions arise as to the constitutional sufficiency of his or her performance. Nevertheless, in instances in which a defendant is charged with more than one offense, a proper assessment of counsel's conduct requires consideration of the disposition of all of the charges against the defendant, not only the ones to which the defendant pleads guilty. The conduct of an attorney who allows a defendant to plead guilty to a charge that is not a crime will be deemed constitutionally deficient on collateral attack only if, upon consideration of all of the charges against the defendant, the conduct prejudiced the defendant. Cf. United States v. Andrews, 790 F.2d 803, 814 (10th Cir.1986) (holding that the defendant was not prejudiced by his attorney's conduct because, among other reasons, "there is every reason to believe that [the defendant], under the Plea

Agreement, accomplished a net reduction in likely or possible felony charges"), cert. denied, 481 U.S. 1018 (1987). Thus, in terms of the procedural default inquiry in cases such as this, the resolution of the "cause" question depends upon the resolution of the "prejudice" inquiry. In order to determine whether Mr. Fowler may pursue his challenge to the § 922(g)(1) conviction through the instant § 2555 motion, we therefore proceed to the prejudice prong of the procedural default inquiry.

## B. "Prejudice"

We conclude that Mr. Fowler was not prejudiced by his procedural default because he substantially benefited from his guilty plea. This conclusion is supported by several state supreme courts and appellate courts which have held that if a defendant substantially benefited from a plea bargain that he entered into voluntarily and intelligently, even if he pleaded guilty to a charge that was not a crime, he is not permitted to collaterally attack that conviction. See Carter v. Neal, 910 F.Supp. 143, 148 (D.Del.1995); Downer v. State, 543 A.2d 309, 312 (Del.1988); People v. Bernard, 656 P.2d 695, 697 (Colo.1983) (en banc); People v. Waits, 695 P.2d 1176, 1178 (Colo.Ct.App.1984), rev'd on other grounds, 724 P.2d 1329 (Colo.1986) (en banc); People v. Castro, 356 N.Y.S.2d 49, 50 (N.Y.App.Div.1974), aff'd mem., 339 N.E.2d 620 (N.Y.1975); People v. Burgan, 183 N.W.2d 413, 414 (Mich.Ct.App.1971); People v. Foster, 225 N.E.2d 200 (N.Y.1967). We believe that the substantial benefit that Mr. Fowler derived from pleading guilty to the § 922(g)(1) offense precludes a determination that any prejudice resulted from his counsel's failure to appeal the § 922(g)(1) conviction.

Mr. Fowler benefited from his guilty plea by avoiding prosecution for the more serious robbery and theft charges. Those charges, had Mr. Fowler been convicted of them, would have carried penalties substantially heavier than the sentences actually imposed. See 18 U.S.C. § 1951; 18 U.S.C. § 922(u); U.S.S.G. § 2B3.1; id. § 2K2.1; United States Sentencing Commission, Guidelines Manual, "Sentencing Table" (Nov.1993). Furthermore, by pleading guilty Mr. Fowler received the benefit of a § 5K1.1 motion for reduction of sentence for substantial assistance and a government recommendation of a three-point reduction for acceptance of responsibility. We agree with the state courts that have held that "since the defendant ... 'used the plea as a tool for avoiding a more serious conviction ... it would be the height of sophistry to vacate the defendant's plea of guilty.' " Downer, 543 A.2d at 313 (quoting Bernard, 656 P.2d at 697). On the other hand, if the attorney had appealed the § 922(g)(1) conviction and had "won," the appropriate remedy would have been to vacate the entire plea agreement and remand for a new trial, a result that probably would have inured to Mr. Fowler's detriment. [FN3] See Santobello v. New York, 404 U.S. 257, 263 (1971).

> FN3. An alternative remedy, which may be imposed in some cases where a plea agreement is determined on appeal to be defective, is specific performance by the breaching party. See Santobello, 404 U.S. at 263; United States v. Thomas, 580 F.2d 1036, 1038 (10th Cir.1978). However, in the instant case, where the issue is not a failure of the government to perform on a promise, that remedy could not sensibly have been imposed.

**6 Because we hold that no prejudice resulted from Mr. Fowler's failure to raise this issue previously, he is now procedurally barred

from raising it on collateral review. See United States v. Frady, 456 U.S. 152, 167-68, 175 (1982); Warner, 23 F.3d at 291.

C. "Fundamental miscarriage of justice"

Mr. Fowler contends that, even if he has not demonstrated cause and prejudice excusing his procedural default, this court is compelled to reach his substantive claim because a failure to do so would result in a fundamental miscarriage of justice. See Warner, 23 F.3d at 291. In this regard, he argues that his conviction under § 922(g)(1) was a legal impossibility because, as the government concedes, his civil rights had been restored without limitation. The legal impossibility of guilt, he urges, renders him "factually innocent."

We have previously explained what is required to satisfy the "fundamental miscarriage of justice" standard:

> The standard for demonstrating a "fundamental miscarriage of justice" is, as the words connote, quite stringent. It is not enough for Appellant merely to establish that, absent the error, he would have been acquitted (i.e., his "legal innocence"). Rather, appellant must make a colorable showing of factual innocence. In the context of a noncapital case, this means appellant must make a colorable demonstration that he is factually innocent of the offense for which he was convicted.

Id. (citations omitted). In deciding whether the "narrow exception," McCleskey v. Zant, 499 U.S. 467, 502 (1991), applies in a particular case, we are guided by the "prototypical example" in which "the State has convicted the wrong person of the crime" such that "it is evident that the law has made a mistake," Sawyer v. Whitley, 112 S.Ct. 2514, 2519-20 (1992). Application of this exception is "rare" and limited to the "extraordinary case." See Schlup v. Delo, 115 S.Ct. 851, 864 & n. 36 (1995). Mr. Fowler does not call our attention to a single case in which a court has relied on the exception to consider the merits of an otherwise procedurally defaulted challenge to a guilty plea, and independent research reveals no such cases.

In light of this amplification of the meaning of the term, and the extreme limitations on its proper invocation, we hold that Mr. Fowler's predicament simply does not fit the description. First, although Mr. Fowler was "factually innocent" of the § 922(g)(1) charge, he admitted that he was not "factually innocent" of the more serious robbery and theft charges. Mr. Fowler admitted in the plea agreement that he and his accomplice had held two store employees at gunpoint and had stolen thirty firearms and $7500 in cash, conduct which the district court appropriately characterized at the sentencing hearing as "extremely serious," Rec. vol. I, doc. 9, ex. 2. Second, the plea of guilty to the two firearms counts was plainly a tactical decision to avoid prosecution for the more serious crimes as to which he also admitted guilt. Third, after benefiting from his plea in this way, Mr. Fowler then failed to take a direct appeal. That too was probably a wise tactical decision. Had he prevailed on appeal, he would have had his plea vacated and again risked facing prosecution for the charges dismissed as a result of the plea. He now asks us on collateral review to excise from his plea agreement a conviction as to which he has admitted guilt, from which he has gained a favorable plea bargain, and which he has declined to challenge on direct appeal. Only a hypertechnical construction of "factual innocence" could lead us to conclude that the facts of this case constitute a fundamental miscarriage of justice. We decline to so hold.

II. Ineffective assistance of counsel

**\*\*7** The second claim in Mr. Fowler's § 2255 motion was that he had received constitutionally ineffective assistance of counsel in violation of his Sixth Amendment rights. The government did not address this issue in its response to the § 2255 motion. In denying the motion, the district court did not explicitly rule on this issue, perhaps because it received so little attention in the briefs. However, the court did note that "Fowler was represented by competent counsel at all stages of the criminal action." Rec. vol. I, doc. 10, at 2. Even if this observation was not a ruling, we may still decide the issue because "all of the pertinent facts are in the record before us." See Laidley v. McClain, 914 F.2d 1386, 1394 (10th Cir.1990). Further, there is no need in considering this issue to engage in the kind of procedural default inquiry that we conducted above: the procedural bar rule does not apply to ineffective assistance of counsel claims raised in a defendant's first § 2255 motion. United States v. Galloway, 56 F.3d 1239, 1241 (10th Cir.1995).

The record is sufficient for us to conclude, analyzing the issue de novo, that Mr. Fowler did not receive constitutionally ineffective assistance of counsel, either in the decision to accept the plea bargain or in the decision not to appeal his § 922(g)(1) conviction, because he was not prejudiced by any error his counsel may have made, as required by Strickland v. Washington, 466 U.S. 668, 693 (1984). A defendant who claims that he received ineffective assistance of counsel in entering a guilty plea must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See Hill v. Lockhart, 474 U.S. 52, 59 (1985); United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir.1993), cert. denied, 114 S.Ct. 1236 (1994). Such a showing "depend[s] largely on whether [he] likely would have succeeded at trial." See Hill, 474 U.S. at 59. Here, Mr. Fowler has made no more than the bare formulaic assertion that, but for his counsel's advice, he "would not have plead [sic] guilty or waived his appeal rights." See Aplt's Opening Br. at 12. However, we conclude that this claim is not credible given the seriousness of the charges that Mr. Fowler avoided by not going to trial and the absence of any offered reason why he might have been confident of an acquittal.

For these reasons, and because we conclude, as discussed above, that Mr. Fowler was not prejudiced by the decision not to appeal, we reject his claim of ineffective assistance of counsel.

### III. Conclusion

For the foregoing reasons, that is, because (1) Mr. Fowler is procedurally barred from raising his § 922(g)(1) claim and (2) he has not demonstrated the prejudice necessary to prevail on a claim of ineffective assistance of counsel, we AFFIRM the order of the district court.

The mandate shall issue forthwith.

ANDERSON, J., concurs in the Order and Judgment, except for Part I.C., and concurs in the disposition of the case set out in the conclusion.

END OF DOCUMENT